

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-30-2008

# Ruiz v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4186

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Ruiz v. Comm Social Security" (2008). *2008 Decisions*. Paper 1668.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1668

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-4186

ROBERTO RUIZ,

Appellant

v.

COMMISSIONER OF SOCIAL SECURITY

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 02-cv-03575)
District Judge: Honorable Dennis M. Cavanaugh

Submitted Under Third Circuit LAR 34.1(a)
on November 30, 2007

Before: BARRY, FUENTES, <u>Circuit Judges</u>, and DIAMOND,[*] <u>District Judge</u>.

(Filed: January 30, 2008)

[*] Honorable Paul S. Diamond, District Judge of the United States District Court for
the Eastern District of Pennsylvania, sitting by designation.

_____

OPINION OF THE COURT

_____

DIAMOND, District Judge.

Robert Ruiz, a successful claimant for Social Security disability benefits, appeals

from the District Court's denial of his application for attorney's fees. Because we

conclude the District Court did not abuse its discretion, we affirm.

## I.      JURISDICTION

We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.     LEGAL STANDARD

Ruiz seeks counsel fees under the Equal Access to Justice Act ("EAJA"). 28

U.S.C. § 2412(d)(1)(A). We have previously explained the "policy underlying the

EAJA":

> Concerned that the Government, with its vast resources, could force
> citizens into acquiescing to adverse Government action, rather than
> vindicating their rights, simply by threatening them with costly
> litigation, Congress enacted the EAJA, waiving the United States'
> sovereign and general statutory immunity to fee awards and creating
> a limited exception to the 'American Rule' against awarding
> attorneys fees to prevailing parties.

Morgan v. Perry, 142 F.3d 670, 683 (3d Cir. 1998) (quoting Pierce v. Underwood, 487 U.S.

552, 575 (1988) (Brennan, J., concurring in part and concurring in the judgment)).

The EAJA provides, in pertinent part, that a prevailing party in litigation against

the Government shall be awarded "fees and other expenses . . ., unless the court finds that

the position of the United States was substantially justified." 28 U.S.C. § 2412(d)(1)(A).

A position is "substantially justified" when it is "justified in substance or in the main -

that is, justified to a degree that could satisfy a reasonable person." Pierce, 487 U.S. at

565. Thus, the Government's position is substantially justified "if it has a reasonable

basis in both law and fact." Morgan, 142 F.3d at 684 (quoting Hanover Potato Prods.,

Inc. v. Shalala, 989 F.3d 123, 128 (3d Cir. 1993)).

To establish that her position was substantially justified, the Commissioner must

show:

> (1) a reasonable basis in truth for the facts alleged; (2) a reasonable
> basis in law for the theory it propounded; and (3) a reasonable
> connection between the facts alleged and the legal theory advanced.

Id. (citing Hanover, 989 F.3d at 128). We have held that the Government's litigation

position may be substantially justified even when it loses on the merits. See, e.g.,

Kiareldeen v. Ashcroft, 273 F.3d 542, 554 (3d Cir. 2001); Morgan, 142 F.3d at 685.

## III.   BACKGROUND

The procedural history of this matter has been complicated by counsel's decision

to pursue two benefits applications, based on different disability allegations. The second

application was successful; the first was not. The fee petition before us relates

exclusively to counsel fees incurred in pursuing the first application.

Ruiz correctly notes that in deciding his claim for counsel fees, the Court must

evaluate "not only the government's litigation position but also the agency position that

made the lawsuit necessary . . . ." (Appellant's Br. at 12); 28 U.S.C. § 2412(d)(2)(D). Accordingly, we will review in some detail the ALJ's denial of the first application -- which became the SSA's final decision after the Appeals Council affirmed it.

### A.     The First Benefits Application

A resident of Jersey City, Ruiz first applied for benefits in 1999, claiming total disability as of September 30, 1998.  Ruiz had been employed in a factory (R. at 273), and also "worked for years picking fruit and tomatoes on farms."  Id. at 20.  Ruiz based his first application on allegations of back and ankle pain, left-eye blindness, and a skin disorder.  In evaluating that application, the ALJ conducted a hearing and followed the required five-step process.  See 20 C.F.R. § 404.1520.  The ALJ first determined that Ruiz had not been employed since September 30, 1998.  (R. at 18.)  The ALJ described Ruiz's physical abilities:

> [Ruiz] engages in a variety of daily activities, which are not typically performed by a person who is too disabled to work.  He reported that he cooks, cleans and takes out the garbage.  He reported that he does not do household repairs because he is not required to do so and he does not garden because he has no garden, but he does take walks.  He testified that he walks to the store to shop.  He watches television up to eight hours per day, an activity that requires extensive visual acuity, visits relatives and attends church.  He is also able to obtain money orders to pay his bills.

Id. at 21.

The ALJ also reviewed considerable medical evidence. Although Ruiz's treating physician, Dr. Purisima, stated in a letter that Ruiz was "totally and permanently disabled," the ALJ explained that he accorded that opinion "no significant weight" because it was contradicted by the doctor's "own objective findings." Id. at 19; see also Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988) ("medical judgment of a treating physician can be rejected only on the basis of contradictory medical evidence"); 20 C.F.R. §§ 404.1527(e), 416.927(e); SSR 96-5p. The ALJ also considered the reports of examining physicians Jasbreet Kaur, M.D., L. Vasallo, M.D., Richard Witlin, M.D., and Bernard Sarn, M.D. (R. at 18-21.) The ALJ thus observed that although Ruiz's "impairments . . . more-than-minimally restrict his capacity to perform basic work activities," the evidence did not establish that Ruiz "suffers from an impairment or combination of impairments which meets or equals the level of severity of any impairment described in 20 C.F.R. Part 404, Subpart P, Appendix 1, incorporated by 20 C.F.R. §§ 404.1525 and 416.925 ["the Listings"]." Id. at 18-19.

The ALJ fully considered several factors -- including Ruiz's daily activities, his work record and his efforts to work -- and concluded that Ruiz's subjective allegations regarding his symptoms and limitations were not fully credible. Id. at 20-21. That credibility assessment as well as medical and related evidence figured in the ALJ's determination respecting Ruiz's residual functional capacity ("RFC"):

> After carefully weighing expert medical and other expert
> opinions regarding [Ruiz's RFC], as well as [Ruiz's] testimony

and the evidence of record, I find that [Ruiz] has had, at all material times, the [RFC] . . . for work involving lifting, and carrying objects weighing up to 20 pounds; frequently lifting and carrying objects weighing up to 10 pounds; standing, walking, and sitting up to six hours in an eight-hour day; pushing and pulling arm and leg controls; and light work not involving exposure to heights or dangerous machinery, and not otherwise requiring binocular vision.

Id. at 21-22.

Significantly, there was no suggestion made before the ALJ that Ruiz suffered from any mental impairment. On the contrary, Dr. Kaur's report stated that Ruiz was "attentive, cooperative with intact memory and judgment, able to ambulate without any difficulty." Id. at 273.

Finally, after considering all the medical evidence, the testimony of the vocational expert, and Ruiz's age, poor education, inability to read English, and his lack of skills, the ALJ found that Ruiz could no longer perform his past relevant work. The ALJ also found, however, that there were a significant number of jobs that Ruiz could perform:

In the region of Hudson, Essex, Union, Morris, and Bergen Counties, such jobs include a hardware assembler, who puts large pieces of hardware together; a folder, who folds textiles; a bagger, who places garments or other items into plastic bags; a packer, who places various goods into boxes or containers; a final assembler, who puts final touches on a product, like putting tags on it; a heat sealing machine operator, who basically places packages into a conveyor for sealing tops. These are unskilled light jobs. In the stated counties, there are about 1,300 such jobs.

Id. at 22. The ALJ also determined that even if Ruiz could perform only sedentary work, his RFC still qualified him to perform 18-20,000 sedentary, unskilled jobs in the New York/New Jersey area. Id. at 22-23. Accordingly, the ALJ concluded " that [Ruiz] has not been disabled within the meaning of the Social Security Act . . . ." Id. at 23.

On July 25, 2002, Ruiz filed suit in the U.S. District Court for the District of New Jersey, claiming that the ALJ's decision was not supported by substantial evidence. On April 27, 2004, the District Court affirmed the ALJ's decision, and Ruiz appealed to this Court.

### B. The Second Application

On May 31, 2002, Ruiz submitted a new application to the SSA. In support of that application, on April 29, 2003, Ruiz alleged for the first time that he was disabled because he was mentally retarded. A new ALJ considered this application and, inter alia, a consultative psychologist's report that Ruiz was mentally retarded.

On July 29, 2004 -- while Ruiz's appeal from the earlier denial of benefits was pending before this Court -- the ALJ ruled that Ruiz was disabled based on his mental impairment. Ruiz and the Commissioner then jointly asked us to remand to the District Court for an award of benefits. We granted that request on November 16, 2004. Ruiz v. Comm'r of Soc. Sec., 189 Fed. Appx. 112, 113 (3d Cir. 2006). The District Court in turn remanded the case to the SSA on June 15, 2005, which subsequently awarded Ruiz benefits retroactive to September 30, 1998.

### C. **Ruiz Seeks Counsel Fees**

On December 1, 2004, Ruiz sought prevailing party attorney's fees and costs

totaling $7,490.61 "for legal work performed in the Federal Courts" in connection with

his first benefits application. On June 27, 2005, the District Court denied Ruiz's motion,

ruling that he was not a prevailing party under the EAJA. Ruiz appealed to this Court.

On June 27, 2006, we reversed -- holding that Ruiz was a prevailing party -- and

remanded for a determination of whether the SSA's litigation position was substantially

justified or whether special circumstances would make an award of fees unjust. Ruiz,

189 Fed. Appx. at 113.

On August 2, 2006, the District Court determined that although no special

circumstances existed, the Agency's litigation position was substantially justified.

Accordingly, the District Court denied Ruiz's application for counsel fees.

Ruiz filed a timely appeal with this Court.

## IV. STANDARD OF REVIEW

We review the District Court's denial of attorney's fees for abuse of discretion.

See Pierce, 487 U.S. at 559; Morgan, 142 F.3d at 682-83.

## V. DISCUSSION

Ruiz contends that the opposition to his benefits application could not have been

substantially justified because, with the Commissioner's agreement, Ruiz was ultimately

-8-

awarded benefits. Ruiz fails to distinguish, however, between his successful second application -- in which he alleged mental impairment -- and his first -- in which he unsuccessfully alleged only physical impairment. The fee application before us relates exclusively to counsel's efforts with respect to the first application. Accordingly, we must decide whether the District Court abused its discretion in determining that the Commissioner's position respecting that first application was "substantially justified." 28 U.S.C. § 2412(d)(1)(A). We conclude that the District Court acted within its discretion.

Applying the three factors discussed in Morgan, it is apparent that the Commissioner has met her burden. Morgan, 142 F.3d at 684 (citing Hanover, 989 F.3d at 128). First, the Commissioner had a reasonable basis in truth for opposing Ruiz's contention that he was physically disabled. Medical and vocational evidence, documents provided to the SSA, and the testimony of Ruiz himself all supported the ALJ's finding that Ruiz was not disabled. Second, there was a reasonable basis in law for the theory the Commissioner propounded. If Ruiz could not meet the Listings, he was not disabled as a matter of law. See 20 C.F.R. § 404.1520; Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Finally, there was a reasonable connection between the facts alleged and the legal theory advanced by the Commissioner. The record establishes that because Ruiz's physical impairments would not prevent him from performing numerous jobs in the local economy, he was not disabled within the meaning of the Social Security Act.

It is thus apparent that the Commissioner's position with respect to Ruiz's first benefits application was substantially justified. In these circumstances, the District Court acted within its discretion when it denied Ruiz's motion for attorney's fees incurred respecting the first disability application.

## VI.    CONCLUSION

For the reasons stated, we affirm the August 2, 2006 Order of the District Court.